**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

|  |  |  |
|---|---|---|
| Carmen Tillman, | ) | C/A No.: 3:26-cv-00619 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | JURY TRIAL DEMANDED |
|  | ) |  |
| Garry L. McFadden, in his official capacity | ) |  |
| as Sheriff of Mecklenburg County, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## COMPLAINT

COMES NOW Plaintiff, Carmen Tillman, by and through her undersigned counsel, files her Complaint.

## PARTIES

1. Plaintiff, Carmen Tillman ("Plaintiff"), is a citizen of Mecklenburg County, North Carolina.

2. Defendant, Garry L. McFadden ("Defendant") is the duly elected Sheriff of Mecklenburg County, North Carolina, and is sued solely in his official capacity.

3. At all relevant times, Defendant possessed the authority to hire, supervise, discipline, and terminate employees of the Mecklenburg County Sheriff's Office, including Plaintiff.

4. At all relevant times, Defendant was Plaintiff's "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII"), and the Americans with Disabilities Act, as amended 42 U.S.C. §12101 *et seq*. ("ADA").

1

5. At all relevant times, Plaintiff was an "employee" within the meaning of Title VII and the ADA.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.

7. This Court has supplemental jurisdiction over Plaintiff's related state-law claim pursuant to 28 U.S.C. §1367.

8. Venue is proper in this District and Division because Defendant performs his official duties in this District and a substantial part of events or omissions giving rise to Plaintiff's claims occurred in Mecklenburg, North Carolina.

## ADMINISTRATIVE PROCEDURES

9. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on May 22, 2024. (EEOC Charge No. 430-2024-02924).

10. On May 6, 2026, Plaintiff was issued a Notice of Right to Sue in her Charge against Defendant entitling her to commence an action under Title VII and the ADA within 90 days of receipt of that Notice. Plaintiff timely filed her Complaint against Defendant within 90 days of her receipt of the Notice of Right to Sue.

11. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the commencement of this matter.

## FACTUAL ALLEGATIONS

12. Plaintiff began working as a Detention Officer for the Mecklenburg County Sheriff's Office on or about March 9, 2011, and remained employed for more than 12 years. She primarily was stationed at Mecklenburg County Detention Center Central.

2

13. Plaintiff's primary job duties as a Detention Officer included supervising residents, maintaining institutional safety and security, documenting events, and preparing reports as necessary.

14. Plaintiff performed her duties satisfactorily throughout her employment. Plaintiff received positive performance reviews, served on the Honor Guard, and made the Sergeant's List on three occasions, including in 2023.

15. Plaintiff is female and has been diagnosed with acute depression and post-traumatic stress disorder ("PTSD"). These conditions substantially limit one or more major life activities and constitute disabilities within the meaning of the ADA.

16. Defendant was aware of Plaintiff's conditions throughout her employment as she requested and utilized medical leave, intermittent leave, light-duty assignments, and other workplace adjustments during her tenure.

17. During her employment, Plaintiff was subjected to repeated sexual harassment by male employees and supervisors, including Captain Anthony Durrah ("Durrah").

18. Durrah asked Plaintiff graphic and unwelcome sexual questions concerning her body, sexual preferences and sexual activity.

19. Among other things, Durrah asked Plaintiff about her bra size, whether she would engage in various sexual acts, and whether she would travel and stay overnight with him for the purpose of having sexual intercourse.

20. Durrah made many of these comments while he and Plaintiff were alone in his office with the door closed.

3

21. Plaintiff did not solicit or welcome Durrah's comments or propositions. Although Plaintiff rejected his advances, Durrah continued to make sexual comments and ask sexual questions.

22. Plaintiff also experienced hostility based on her medical conditions and disabilities from Durrah.

23. On at least one occasion, after Plaintiff reported to work but needed to leave because of illness, Durrah told her that she was not sick and simply did not want to work on a particular pod.

24. Plaintiff complained about the harassment, disability-related mistreatment, and other disparate treatment on numerous occasions.

25. Her complaints included communications and meetings with Chief of Detention Telisa E. White, County Manager Dena R. Diorio, and the Mecklenburg County Sheriff's Office's Office of Professional Compliance ("OPC").

26. On or about March 17, 2023, Plaintiff met with Chief White and reported harassment, employee misconduct, and other workplace concerns.

27. On or about March 21, 2023, Chief White forwarded Plaintiff's allegations to OPC, which opened an investigation on or about March 23, 2023.

28. On May 3, 2023, Plaintiff submitted a formal written incident report describing Durrah's sexual comments, disability-related mistreatment, unequal access to training and promotional opportunities, restrictions on her work assignments, and her fear of retaliation.

29. Plaintiff reported that she had not been permitted to apply for certain training or assignments, including Programs Officer and Armed Detention Officer positions. She also reported

4

that she was not permitted to rotate throughout the detention facility in the same manner as other employees.

30. Plaintiff asked Defendant to protect her and place her in an environment away from Durrah.

31. Defendant and his agents failed to take effective corrective action. Instead, they disclosed Plaintiff's complaints to employees about whom she had complained, causing Plaintiff to fear for her personal and professional safety.

32. As part of the investigation, Defendant required Plaintiff to submit to a polygraph examination concerning whether Durrah had made three of the sexual comments she reported.

33. The examination was inconclusive and did not establish that Plaintiff was deceptive.

34. Nevertheless, Defendant and his agents treated Plaintiff's harassment allegations as unfounded and did not meaningfully investigate or discipline Durrah.

35. Durrah remained employed by the Mecklenburg County Sheriff's Office.

36. After Plaintiff complained, Defendant required her to undergo an OPC investigation and polygraph examination, issued her multiple write-ups, and replaced her initially positive 2023 performance review with a less favorable version. Plaintiff had not previously experienced a similar alteration of her performance evaluation.

37. Defendant ultimately treated the allegations she reported as violations of Defendant's policies concerning truthfulness, abuse of position, unbecoming conduct, and participation in administrative investigations.

5

38. Defendant's policies prohibited sexual harassment and instructed employees to report harassment and other misconduct to OPC. The policies also required employees to cooperate in administrative investigations and answer questions truthfully.

39. Plaintiff attempted to comply with those policies by reporting sexual harassment and other workplace misconduct.

40. On multiple occasions during her employment, Plaintiff also reported allegations that employees brought contraband into the detention facility, fraternized with residents, placed money on residents' accounts, consumed alcohol before operating county vehicles, and engaged in sexual activity while on duty.

41. For example, Plaintiff alleged that two officers had placed money on residents' accounts for commissary purchases.

42. Rather than treating Plaintiff's reports as compliance with Defendant's policies, Defendant accused her of making false or unfounded allegations against other employees.

43. Defendant alleged that Plaintiff had violated policies concerning conduct unbecoming an employee, abuse of position, truthfulness, and participation in administrative investigations.

44. On November 21, 2023, Plaintiff was notified that a Chain of Command Review Board would convene on November 28, 2023, to address those accusations.

45. At the November 28, 2023, hearing, Plaintiff explained that she had initially been afraid to report Durrah because she feared losing her job, but ultimately came forward because she could no longer remain silent about his conduct.

46. Defendant and his agents sustained the allegations against Plaintiff and terminated her on November 28, 2023. The termination documentation identified conduct unbecoming an

6

employee, abuse of position, participation in administrative investigations, and truthfulness as the grounds for termination.

47. Defendant's hostile treatment continued after Plaintiff's termination.

48. Although Plaintiff was given fourteen days to return her uniform, Major Joseph Serrano repeatedly contacted her and demanded that she return it immediately. Serrano also threatened to send sheriff's deputies to Plaintiff's home if she did not return the uniform.

49. Defendant later opposed Plaintiff's claim for unemployment benefits and asserted that she had been discharged for misconduct connected with work.

50. Following an evidentiary hearing, the North Carolina Division of Employment Security Appeals Section reversed Plaintiff's disqualification for unemployment benefits and determined that she had not committed misconduct connected with work, noting that Durrah remained employed but did not testify, Defendant's witnesses lacked firsthand knowledge of his interactions with Plaintiff, and Defendant's witness acknowledged that Plaintiff had participated in the internal investigation and answered the questions presented to her.

51. Defendant's stated reasons for terminating Plaintiff were false, inconsistent, and pretextual.

52. Defendant punished Plaintiff for reporting sexual harassment, disability-related mistreatment, discrimination, and other workplace misconduct.

53. Similarly situated male and non-disabled employees were not subjected to the same scrutiny, discipline, or termination for comparable conduct.

54. Plaintiff's sex, disabilities, disability-related leave and accommodation requests, and complaints of discrimination and harassment were motivating factors in Defendant's adverse actions.

7

**FOR A FIRST CAUSE OF ACTION**
**Sex Discrimination in Violation of Title VII**

55.     Plaintiff realleges the foregoing paragraphs where not inconsistent herewith.

56.     Plaintiff is a member of a protected class based on her sex.

57.     Plaintiff was subjected to unwelcome sexual conduct by male employees and supervisors, including repeated graphic sexual questions, sexual propositions, leering, and other sexually inappropriate behavior.

58.     The unwelcome conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile and abusive working environment.

59.     Plaintiff subjectively viewed the conduct as hostile, intimidating, and abusive.

60.     Plaintiff reported harassment to Defendant's management and the Office of Professional Compliance, but Defendant failed to take adequate remedial action.

61.     Instead, Defendant permitted the hostile working environment to continue and subjected Plaintiff to unfavorable treatment, discipline, and termination.

62.     Defendant also treated similarly situated male employees more favorably with respect to discipline and other terms and conditions of employment.

63.     Plaintiff's sex was a motivating factor in Defendant's actions.

64.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, reputational harm, and other damages. Plaintiff is also entitled to attorney's fees, costs, prejudgment interest, and all other relief available under Title VII.

**FOR A SECOND CAUSE OF ACTION**
**Retaliation in Violation of Title VII**

65.     Plaintiff realleges the foregoing paragraphs where not inconsistent herewith.

8

66. Plaintiff engaged in protected activity by opposing sexual harassment and sex discrimination, reporting that conduct to Defendant's management and the Office of Professional Compliance, and participating in Defendant's investigation.

67. Defendant was aware of Plaintiff's protected activity.

68. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including discipline, unfavorable performance documentation, accusations that she had made false or unfounded allegations, and termination.

69. Defendant relied on Plaintiff's reports of harassment and employee misconduct as a basis for accusing her of violating its policies concerning truthfulness, abuse of position, conduct unbecoming an employee, and participation in administrative investigations.

70. Defendant terminated Plaintiff because of her protected activity.

71. Defendant's stated reasons for disciplining and terminating Plaintiff were false and were a pretext for retaliation.

72. Plaintiff would not have been subjected to the challenged adverse actions or terminated but for her opposition to sex discrimination and sexual harassment.

73. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, lost benefits, reputational harm, emotional distress, embarrassment, humiliation, and other damages. Plaintiff is also entitled to equitable relief, attorney's fees, costs, prejudgment interest, and all other relief available under Title VII.

**FOR A THIRD CAUSE OF ACTION**
**Disability Discrimination in Violation of the ADA**

74. Plaintiff realleges the foregoing paragraphs where not inconsistent herewith.

75. Plaintiff has disabilities within the meaning of the ADA because her acute depression and PTSD substantially limit one or more major life activities.

9

76.     Defendant knew of Plaintiff's disabilities, medical conditions, disability-related leave, and need for workplace adjustments.

77.     Plaintiff was qualified for her position as a Detention Officer and remained able to perform the essential functions of her position with or without reasonable accommodation.

78.     Plaintiff had successfully performed her position for more than twelve years and received positive performance reviews and other recognition during her employment.

79.     Defendant treated Plaintiff less favorably because of her disabilities and her need for disability-related leave and workplace adjustments.

80.     Defendant subjected Plaintiff to disability-related hostility, unfavorable performance documentation, discipline, and termination, while similarly situated non-disabled employees were treated more favorably.

81.     Defendant's stated reasons for disciplining and terminating Plaintiff were false and pretext for disability discrimination.

82.     As a direct and proximate result of Defendant's actions, Plaintiff suffered lost wages, lost benefits, diminished earning capacity, emotional distress, humiliation, embarrassment, reputational harm, and other damages. Plaintiff seeks back pay, front pay or reinstatement, compensatory damages, equitable relief, prejudgment interest, a tax offset for any lump-sum wage award, attorney's fees, costs, and all other relief available under the ADA.

## FOR A FOURTH CAUSE OF ACTION
### Retaliation in Violation of the ADA

83.     Plaintiff realleges the foregoing paragraphs where not inconsistent herewith.

84.     Plaintiff engaged in activities protected by the ADA when she requested and utilized medical leave, intermittent leave, light-duty assignments, and other workplace adjustments related to her disabilities.

10

85. Plaintiff also engaged in protected activity when she opposed and reported disability-related mistreatment, including Durrah's accusation that she was not sick and merely did not want to work a particular assignment.

86. Defendant knew of Plaintiff's disabilities, accommodation requests, leave, and opposition to disability discrimination.

87. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including unfavorable performance documentation, discipline, accusations of dishonesty and misconduct, and termination.

88. Defendant treated Plaintiff less favorably than similarly situated employees who had not exercised rights protected by the ADA.

89. Defendant's stated reasons for disciplining and terminating Plaintiff were false and pretext for retaliation.

90. Plaintiff's protected activities were a but-for cause of Defendant's adverse actions.

91. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, lost benefits, diminished earning capacity, emotional distress, humiliation, embarrassment, reputational harm, and other damages. Plaintiff seeks back pay, front pay or reinstatement, equitable relief, prejudgment interest, a tax offset for any lump-sum wage award, attorney's fees, costs, and all other relief available under the ADA.

### FOR A FIFTH CAUSE OF ACTION
### Wrongful Discharge in Violation of North Carolina Public Policy

92. Plaintiff realleges the foregoing paragraphs where not inconsistent herewith.

93. North Carolina has declared it to be the public policy of the State to protect the right and opportunity of all persons to obtain and hold employment without discrimination because of sex or handicap/disability.

11

94. This public policy is expressed in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2, and the North Carolina Persons with Disabilities Protection Act, N.C. Gen. Stat. § 168A-5.

95. Plaintiff is female and has qualifying disabilities, including acute depression and PTSD. Plaintiff is therefore a member of the classes of persons protected by this public policy.

96. Contrary to the public policy of North Carolina, Defendant, acting through his agents, wrongfully discharged Plaintiff because of her sex and disabilities.

97. Defendant is liable for the acts and omissions of his managers, supervisors, and other agents.

98. Defendant engaged in the foregoing discriminatory practices in willful violation of North Carolina public policy and with reckless indifference to Plaintiff's rights.

99. As a direct and proximate result of Defendant's discriminatory practices, which were contrary to North Carolina public policy, Plaintiff has suffered and will continue to suffer lost pay, lost benefits, emotional distress, embarrassment, humiliation, reputational harm, and other damages resulting from Defendant's wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, upon the trial of this matter, Plaintiff prays that the Court enter Judgment for her and award the following relief:

a. An order requiring Defendant to reinstate Plaintiff to her former position as a Detention Officer, or to a substantially equivalent position with comparable salary, benefits, seniority, and other terms and conditions of employment;

b. An award of back pay, front pay, lost employment benefits, retirement benefits, and all other compensation denied or lost because of Defendant's unlawful conduct;

12

c. Compensatory damages for Plaintiff's emotional distress, embarrassment, humiliation, reputational harm, and other nonpecuniary losses;

d. Punitive damages to the extent permitted by law;

e. Prejudgment and post-judgment interest on all amounts for which such interest is legally recoverable;

f. An appropriate tax offset for any lump-sum award of back pay, front pay, or other taxable damages;

g. An award of Plaintiff's reasonable attorney's fees and costs;

h. All appropriate declaratory, equitable, and injunctive relief;

i. All other relief, whether legal or equitable, that the Court deems just and proper; and

j. A trial by jury on all claims and issues so triable.

**CROMER BABB & PORTER, LLC**

BY: *s/Jacob J. Modla*
Jacob J. Modla (NC Bar #17534)
Jillian M. Lesley (NC Bar #64522)
1418 Laurel Street, Suite A (29201)
Post Office Box 11675
Columbia, South Carolina 29211
Phone: 803-799-9530
Fax: 803-799-9533
jake@cromerbabb.com
jill@cromerbabb.com

*Attorneys for Plaintiff*

August 3, 2026
Columbia, South Carolina

13